Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3434 | **DATE** | March 27, 2002 |
| **CASE TITLE** | Andrews, et al. v. National Association of Letter Carriers Union | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Motion by Defendant to Dismiss, or in the alternative for Summary Judgment (doc. #5)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment (doc. #5) is **GRANTED**. All pending motions and dates are terminated as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | | |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | MAR 2 9 2002 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 32 |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| | | date mailed notice | |
| JHC | courtroom deputy's initials | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JUNE ANDREWS, LATISE HUGHES,
RICHARD RUSH, SOPHIA BANKS,
LUCY SINGLETON, VALERIE MILES,
KATHLEEN STROUD-HOWARD, LOUISE
PERSON, SULAR JONES, WALTER CARTER,
MARJORIE JONES, ANTONIO SPARKMAN,
BRIAN ROSS, and TRACEY PERKINS,
                Plaintiffs,
v.

BRANCH 11 NATIONAL ASSOCIATION OF
LETTER CARRIERS UNION, AFL-CIO,
                Defendant.

CASE NO. 01 C 3434

JUDGE WILLIAM J. HIBBLER

## MEMORANDUM OPINION AND ORDER

Plaintiffs are 14 current and former letter carriers with the United States Postal Service ("USPS") who, pursuant to 39 U.S.C. § 1208 of the Postal Reorganization Act, are suing the National Association of Letter Carriers Union ("NALC"), its former president Jonathan Hunter, and current president James Worsham for breach of contract (Count I), breach of duty of fair representation (Count II), and intentional infliction of emotional distress (Count III). Defendants move this Court to dismiss the Complaint, or alternatively grant summary judgment in their favor, on the basis that the claims are time-barred and that the evidence clearly demonstrates NALC pursued grievances in good faith on behalf of each Plaintiff. For the following reasons, Defendants' motion for summary judgment is granted.[1]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Cox v. Acme Health Serv., Inc.*, 55 F.3d 1304, 1308 (7th Cir. 1995). The moving party bears the initial

---

[1] By submitting exhibits in support of their motion, Defendants implicitly ask this Court to consider matters outside the four corners of the pleadings. As such, their motion must be treated as a request for summary judgment pursuant to Fed. R. Civ. P. 56. *See* Fed. R. Civ. P. 12(b).



burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies this burden then the nonmovant must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). However, self-serving assertions, without factual support in the record, are insufficient to defeat a summary judgment motion. *James v. Sheahan*, 137 F.3d 1003, 1006 (7th Cir. 1998).

Before turning to the particulars of this case, the Court finds it necessary to briefly review the requirements imposed by our Local Rule 56.1 which governs summary judgment motions, particularly those provisions relating to statements of material facts. *See, e.g., Malec v. Sanford*, 191 F.R.D. 581, 582-87 (N.D. Ill. 2000) (Castillo, J.) ("Lately we have discerned a trend of poorly presented and argued summary judgment motions. We use this case as a vehicle to inform lawyers . . . what precisely we expect from summary judgment practitioners."). Such statements are intended to serve as "the vehicle through which counsel identifies the relevant facts and the evidence establishing those fa[c]ts." *Id.* Consequently, only factual allegations, not legal arguments, should be included. *Id.* Furthermore, in responding to the statement, evasive and contradictory answers are inappropriate and thus subject to being stricken. *See Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 527 (7th Cir. 2000).

In accordance with Local Rule 56.1(a)(3), Defendants, as the movants, submitted a statement of facts identifying, for the most part, every act engaged in by NALC, pursuant to the applicable grievance-arbitration procedures, on behalf of each Plaintiff. Additionally, Defendants proffered documents backing up NALC's claim that it had indeed challenged the disciplinary actions taken against Plaintiffs. As the parties opposing summary judgment, the burden shifted to Plaintiffs to point out in their response to Defendants' factual assertions and statement of additional facts, clearly disputed material facts to be resolved at trial. However, Plaintiffs ultimately created further confusion by concurrently filing a Local Rule 56.1(b)(3)(A) response admitting each of Defendants' factual allegations (i.e., that NALC represented Plaintiffs), and a contradictory Local Rule 56.1(b)(3)(B) statement of additional facts tracking the conclusory allegations of their Complaint (i.e., that NALC did not properly represent them). In terms of supporting documentation for the latter contention, Plaintiffs primarily provided affidavits from the individual Plaintiffs attesting that they were not adequately represented. Not a single Plaintiff even

addressed, let alone contested, Defendants' evidence that a significant majority of the Plaintiffs were actually represented by NALC throughout the grievance process and achieved a favorable result.

For instance, Plaintiff Brian Ross claims in Plaintiffs' Local Rule 56.1(b)(3)(B) statement that the union steward did not file a grievance as he requested, (Pls.' LR 56.1(B)(3) Statement at ¶¶29-30), but concedes in Plaintiffs' Local Rule 56.1(b)(3)(A) response that NALC, in fact, pursued grievances on his behalf, (Pls.' LR 56.1 Statement at ¶¶111-116). Other Plaintiffs assert similar antithetical positions. But for purposes of summary judgment, Plaintiffs cannot have it both ways -- they either agree that NALC represented them or they do not. After taking into consideration the fact that Plaintiffs unquestionably admitted all of Defendants' factual statements are correct, and that their contrary allegations are unsupported by any evidentiary material whatsoever, this Court finds Plaintiffs' statement of additional facts cannot stand. *Cf. Bordelon*, 233 F.3d at 527. Therefore, the Court will disregard Plaintiffs' additional facts to the extent they contradict a fact Plaintiffs also admit. For all practical intents and purposes, what that means is the Court takes as true the statement of facts set forth by Defendants, but still draws all reasonable inferences in favor of Plaintiffs, *Anderson*, 477 U.S. at 255.

## BACKGROUND

Plaintiffs, as UPSP letter carriers, are entitled to representation by NALC when disputes arise regarding their employment. The Agreement between the USPS and NALC specifically identifies a grievance-arbitration procedure for resolving complaints by employees. At Step 1, the aggrieved employee and/or NALC has 14 days in which to discuss the grievance with the employee's supervisor. If the grievance is denied by the supervisor, NALC has 10 days to appeal to a Step 2 official (USPS representative). An adverse Step 2 decision may then be appealed by NALC within 15 days for Step 3 consideration. Finally, if no favorable result is obtained at Step 3, NALC has 21 days to request final and binding arbitration.[2]

Plaintiffs each received a letter informing them USPS had determined disciplinary action against them was warranted. And, in each instance, NALC responded to those disputes in accordance with the

---

[2]A limited number of grievances involving issues of national importance may proceed to Step 4 review.

-3-

steps outlined above. Plaintiffs Hughes, S. Jones, Rush, and Sparkman were charged with discarding, delaying, or mistreating deliverable mail and were either notified of removal or placed on unpaid status. NALC represented Hughes until she informed them on September 18, 2000, immediately prior to her arbitration, that she had retained private attorneys to proceed on her behalf. On October 16, 2000, the arbitrator sustained in part and denied in part her grievance, thereby resulting in her reinstatement. Unlike Hughes, NALC actually represented S. Jones at arbitration. However, as with Hughes, the arbitrator, on October 11, 2000, ordered reinstatement. For Rush and Sparkman, NALC, representing them, settled their grievances on favorable terms on March 7, 2000, and September 25, 2000, respectively.

Similarly, NALC represented Plaintiffs Banks, Singleton, Howard, Carter, and M. Jones, who had, for various reasons, all received notices of removal. Arbitrators denied the grievance of Banks on January 23, 2001, and Singleton on October 19, 2000. As for Howard, NALC advanced to Step 3 on her behalf, but withdrew the grievance on May 1, 2001 upon learning that Howard's disability retirement had been approved. Although Howard now claims in her affidavit that NALC resolved the grievance without her consent and on terms that were against her best interests, (Pls. LR 56.1((B)(3) Statement, Ex. M), she does not submit any evidence in support of those factual contentions. Both Carter, on May 27, 1999, and M. Jones, on February 2, 2000, reached settlements that resulted in them retaining their positions.

Likewise, NALC favorably settled two grievances on behalf of Plaintiff Miles on September 5, 1998, and May 22, 2000. And, after NALC pursued grievances for Plaintiff Person, the USPS found in her favor at Step 1, so the grievance was withdrawn on August 25, 1999. Arbitration dates for Plaintiffs Ross and Andrews had not been set as of the date of this motion. Finally, NALC concedes it did not file grievances on behalf of Plaintiff Perkins who complains that she was placed on limited duty status in 1998 and harassed and threatened by her supervisors. Perkins claims NALC ignored her requests for assistance.

In sum, the parties agree NALC actually represented each of the Plaintiffs in their grievances, including appearing on their behalf at arbitration. Of the 13 Plaintiffs NALC represented, 9 have already obtained favorable outcomes. Only 2 Plaintiffs (Banks and Singleton) were unsuccessful in their challenges to removal, while 2 others (Ross and Andrews) await arbitration dates. Nevertheless, Plaintiffs filed this action on May 10, 2001, alleging Defendants breached their duty of fair representation. Furthermore, in

response the summary judgment motion, Plaintiffs contend NALC filed untimely grievances. The record, however, does not reflect that timeliness was ever raised by anyone as an issue during the grievance process.

## ANALYSIS

### A. Statute of Limitations

Defendants contend Plaintiffs' claims against them are untimely. In Count II of their Complaint, Plaintiffs claims Defendants (a Union and its officials) breached their duty of fair representation by failing to properly process grievances and present evidence and information on their behalf. This is a hybrid § 301/fair representation claim as discussed in *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151,164-5 (1983), where dissatisfied union members can sue their employer under § 301 of the Labor Management Relations Act and/or the labor union for breach of its duty of fair representation. In this case, Plaintiffs have sued the union only.

The six-month federal statute of limitations in §10(b) of the National Labor Relations Act equally applies to this situation. *Id.* at 169-70; *Adams v. Budd Co.*, 846 F.2d 428, 431 (7th Cir. 1988). The Seventh Circuit has expressly stated that the six-month limitations period begins to run "from the time a final decision on the employee's grievance has been made or from the time the employee discovers, or in the exercise of reasonable diligence should have discovered, that no further action would be taken on his grievance." *Adams*, 846 F.2d at 431 (citation omitted).

Plaintiffs ask this Court to disregard the six-month limitations period, as other Circuits have questioned its applicability to fair representation cases. However, as noted above, the Seventh Circuit has clearly spoken on this issue. *See Malec*, 191 F.R.D. at 586 ("when the Supreme Court or Seventh Circuit has decided cases on point, opinions by other courts are virtually irrelevant"). In that Plaintiffs make no real attempt to distinguish *Adams*, or any other precedential case law, this Court finds their argument unpersuasive.

Plaintiffs filed their Complaint on May 10, 2001. Even if this Court generously construed the outer time limit for Plaintiffs' lawsuit as December 10, 2000 (six months prior to the date they actually filed), Defendants have presented uncontested evidence showing that 10 of the Plaintiffs had their grievances

-5-

resolved long before that date.[3] Thus, for those individuals, the six-month limitations period has been exceeded. As for Plaintiff Perkins, she alleges coworkers harassed and threatened her in July 1998 while her union representative refused to file grievances on her behalf. Again, this Court must determine when Perkins reasonably should have known her cause of action against NALC had accrued. The only specific date Perkins mentions in the Complaint or her response to the summary judgment motion is July 1998, so that is the date this Court finds the clock started running. Consequently, Perkins' claim is also time-barred.[4]

B. **Breach of Duty of Fair Representation**

But even if Plaintiffs' claims are timely, Defendants maintain the undisputed evidence demonstrates they satisfied their obligation to represent Plaintiffs in the grievance process.[5] "A union owes employees a duty to represent them adequately as well as honestly and in good faith." *Air Line Pilots Ass'n Int'l. v. O'Neill*, 499 U.S. 65, 75 (1991). A union therefore breaches its duty of fair representation if its actions are (1) arbitrary, (2) discriminatory, or (3) in bad faith. *Id.* at 67; *Ooley v. Schwitzer Div., Household Mfg. Inc.*, 961 F.2d 1293, 1302 (7th Cir. 1992). Mere negligence or error in judgment does not constitute a breach. *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 369 (1990). Instead, arbitrariness is established only if the union's actions are "so far outside a wide range of reasonableness that the actions rise to the level of irrational or arbitrary conduct." *Ooley*, 961 F.2d at 1302, *quoting O'Neill*, 499 U.S. at 78. Indeed, to establish bad faith on the part of the union, an employee must point to specific facts demonstrating some improper motive behind the union's action. *O'Neill*, 499 U.S. at 80.

---

[3]Hughes (arbitration award on 10/16/00), S. Jones (arbitration award on 10/11/00), Rush (settled on 3/7/00), Sparkman (settled on 9/25/00), M. Jones (settled on 2/2/00); Carter (grievance withdrawn on 5/27/99), Person (grievance withdrawn on 8/25/99), Miles (grievances settled on May 22, 2000 and July 26, 2000), Howard (grievance withdrawn on 5/11/00), and Singleton (arbitration award on 10/19/00).

[4]Perkins implies that she has continually requested assistance from NALC but to no avail. However, Perkins has not presented specific facts or evidence to support her claim that on occasions other than July 1998, NALC refused to represent her. Thus this Court's consideration is necessarily limited by Perkins' failure to identify a factual dispute that would defeat summary judgment. *See, e.g., Celotex Corp.*, 477 U.S. at 326.

[5]Defendants' argument applies to all Plaintiffs except Perkins, since they concede no grievances were filed on her behalf.

Although Plaintiffs alleged in their Complaint that Defendants did not represent them, they now concede the representation occurred, but suggest in response to the summary judgment motion that it was inadequate because the grievances were not filed in a timely manner. Certainly, Defendants' own documentation shows that they did not strictly comply with the time limits established by the Agreement governing the grievance process. However, Plaintiffs have not come forward with a shred of evidence to suggest they were prejudiced by Defendants' conduct, or that Defendants acted in bad faith. In fact, the timeliness of the grievances is not mentioned by either USPS or the arbitrators as a decisive factor. In a case where Plaintiffs concede Defendants represented all but one of them in the grievance process, and ultimately obtained favorable results for all but two of those individuals, this Court is hard pressed to find Defendants acted arbitrarily, and outside the range of reasonableness, particularly when Plaintiffs have not specifically articulated or proven that a material issue of fact exists regarding Defendants' representation of them.

Obviously Defendants did not represent Perkins, so her situation is a little different from that of the other Plaintiffs. Nevertheless, even if the Court had not found Perkins' claim untimely, it would still reject her breach of fair representation claim on the merits for lack of proof. Perkins simply has not sustained her burden as the nonmovant to present enough evidence such that a jury could reasonably find in her favor. *See Anderson*, 477 U.S. at 252.

Defendants are therefore entitled to summary judgment on Plaintiffs' breach of fair representation claims. And, because the breach of contract count is essentially identical to the fair representation claim, it fails also. Moreover, in that the federal claims have been dismissed, this Court declines to exercise supplemental jurisdiction over the remaining state law count for intentional infliction of emotional distress.

## CONCLUSION

Courts generally do not grant summary judgment before the parties have engaged in discovery. Indeed, a party opposing summary judgment can ask the Court, pursuant to Fed. R. Civ. P. 56(f), to postpone ruling on the pending motion until that party has had an opportunity to gather the necessary evidence to demonstrate the existence of a material factual dispute. Plaintiffs could have such a request to this Court, but they did not. Instead, Plaintiffs admitted the truth of Defendants' factual statements, and then in rebuttal offered contrary and conclusory contentions without supporting materials. Perhaps there is evidence somewhere to substantiate Plaintiffs' claims that Defendants did not adequately represent them, but it has not been presented to this Court. Absent such proof, Plaintiffs have failed to satisfy their burden of identifying a genuine issue for trial. Consequently, summary judgment is granted in favor of Defendants.

**IT IS SO ORDERED.**

WILLIAM J. HIBBLER, DISTRICT JUDGE

**DATED:** March 27, 2002